UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI ROUNDTABLE FOR LIFE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:09CV02024 ERW |
| ROBIN CARNAHAN, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Susan Montee's Motion to Dismiss [doc. #10] and Defendant Robin Carnahan's Motion to Dismiss [doc. #11].

**I.    FACTUAL BACKGROUND[1]**

This case arises out of thirteen ballot initiatives, proposing amendments to the Missouri Constitution, filed with Missouri Secretary of State Robin Carnahan ("Carnahan") and State Auditor Susan Montee ("Montee") (collectively, "Defendants") by Missouri Roundtable for Life and Frederic N. Sauer (collectively, "Plaintiffs").  Plaintiffs allege that Defendants infringed on their constitutional rights and violated Missouri law by drafting prejudicial ballot initiative summaries, fiscal notes, and fiscal note summaries.

Plaintiffs submitted their first three amendments in March 2008, seeking to (1) redirect the first $200 million allocated annually to the Life Sciences Research Trust Fund[2] to provide primary

---

[1] The Court's recitation of the facts is taken from Plaintiffs' Complaint [doc. #1].

[2]  The Life Sciences Research Trust Fund was created in 2003 to receive monies from the state tobacco settlement.  Funds are disbursed for life science research each year.

healthcare for low-income Missourians, excluding abortion services, human cloning, and state-prohibited human research; (2) permit legislators to redirect appropriations already earmarked for stem cell research; and (3) completely eliminate section 38(d) of Article III of the Missouri Constitution, the "Missouri Stem Cell Research and Cures Initiative."  In December 2008, Plaintiffs submitted an amendment to add a section 38(e) to Article III, which would ban public funding for abortion services, human cloning, and prohibited human research.  Plaintiffs then submitted three amendments in February 2009 that separately proscribed public funding for those activities.[3]  Plaintiffs re-filed additional, substantially similar versions of the previously-submitted March 2008 and December 2008 amendments in June, July, and September of 2009.

Each of these ballot initiatives was submitted to Carnahan pursuant to the statutory provisions for initiative petitions contained in Mo. Rev. Stat. § 116.332.  For all thirteen proposed amendments, Carnahan certified each petition's form and drafted a summary statement for the petition to appear on election ballots.  Pursuant to Mo. Rev. Stat. § 116.334, the summary must be "a concise statement not exceeding one hundred words . . . in the form of a question [and] using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure."  Mo. Rev. Stat. § 116.334.

As provided for in Mo. Rev. Stat. § 116.175, Carnahan also forwarded the petitions to Montee, requesting a fiscal note and fiscal note summary for each of the initiatives.  Montee assessed the fiscal implications of Plaintiff's amendments, having the options of consulting with other government entities, parties with knowledge of the proposal's cost, and interested parties

---

[3] Plaintiffs re-filed additional versions of the previously-submitted March 2008 and December 2008 amendments in June, July, and September of 2009.

who submitted cost estimates consistent with the standards of the governmental accounting standards board and state law.  After receiving the fiscal summaries from Montee, Defendant Carnahan certified the petitions with Official Ballot Titles and mailed copies of the titles, fiscal notes, and fiscal note summaries to Plaintiffs.

Plaintiffs contend that Defendants offered inaccurate and misleading ballot summaries and fiscal notes so as to confuse Missouri voters and prejudice them against their initiatives.   Based on these allegations, Plaintiffs assert counts against Defendants, in both their official and individual capacities, under 42 U.S.C. § 1983 for conspiracy to violate and violations of their constitutional rights, specifically their First Amendment free speech rights, their First Amendment rights to petition the government for redress of grievances, and their due process rights, presumably under the Fourteenth Amendment.  Plaintiffs also assert a state-law claim against Carnahan under Mo. Rev. Stat. § 116.334, and a conspiracy claim under the same statute against both Defendants.  Plaintiffs seek declaratory and injunctive relief prohibiting Defendants' future infringement of Plaintiffs' constitutional rights, as well as injunctions prohibiting future violations of Mo. Rev. Stat. §§ 116.175 and 116.334.  Additionally, Plaintiffs request actual, compensatory, and nominal damages from Defendants in their individual capacities, punitive damages, attorneys' fees, and costs.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give a short and plain statement "plausibly suggesting . . . that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).  Under this standard, a claim is facially plausible where "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) (internal citations omitted). This content must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Thus, application of this standard suggests a two-step analysis under which the court may first (1) determine whether there are factual allegations in the complaint sufficient to entitle the plaintiff to "the assumption of truth," and if so, (2) "a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. 1937, 1950.

### III. DISCUSSION

In separate motions to dismiss, Defendants argue that Plaintiffs' claims must be dismissed because, among other reasons, they are barred by the Eleventh Amendment and qualified immunity, and because Plaintiffs have failed to state claims upon which relief can be granted. The Court considers Plaintiffs' § 1983 claims first, and then turns to Plaintiffs' state-law claims.

#### A. § 1983 Claims under the First and Fourteenth Amendments

As noted above, Plaintiffs assert their § 1983 claims against Defendants in both their individual and official capacities, seeking declaratory, injunctive, and monetary relief. These claims do in certain instances implicate both the Eleventh Amendment and the doctrine of qualified immunity, but the insufficiency of Plaintiffs' claims is most squarely demonstrated by their failure to allege any constitutional violations.

### 1. First Amendment Claims

The core of Plaintiffs' First Amendment claims is their assertion that Defendants, in violation of Mo. Rev. Stat. § 116.190, prepared "insufficient" and "unfair" ballot summaries and fiscal notes, and that in so doing, Defendants' actions violated Plaintiffs' rights to free speech and to petition the government for redress of grievances. Plaintiffs offer no authority, however, for the proposition that the requirements of § 116.190, which provides for a state-law cause of action to challenge "insufficient or unfair" ballot summaries and fiscal notes, are co-extensive with, or bear any relation to, the requirements of the First Amendment. In fact, the Eighth Circuit has squarely held that "the right to a state initiative process is not a right guaranteed by the United States Constitution, but is a right created by state law." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). Thus, Plaintiffs have no First Amendment right to propose ballot initiatives, and Defendants' alleged failure to properly characterize Plaintiffs' proposed amendments to the Missouri Constitution necessarily also does not implicate Plaintiffs' First Amendment rights, whether in terms of their rights to free speech or to petition the government for redress of grievances. Accordingly, Plaintiffs' claims alleging such constitutional violations must be dismissed.

### 2. Procedural Due Process Claims

In *Dobrovolny*, the Eighth Circuit did recognize that a state initiative process may have constitutional implications to the extent that "state law has created . . . an interest substantial enough to rise to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994)). In such cases, federal law determines whether an interest

created by state law does, in fact, rise to the level of a liberty interested protected by the Fourteenth Amendment, but the state law creating the interest establishes its scope and availability. *Id.* (internal citations omitted).

Even if the Court were to assume that Missouri's initiative procedures created such a protected liberty interest in Plaintiffs, they have nevertheless failed to allege due process claims because they do not assert that the procedures afforded them by Missouri law were inadequate. *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."). Here, Plaintiffs only allege that the process provided resulted in an incorrect determination, and they flatly concede that Missouri's ballot initiative procedures are constitutional. Furthermore, there is no indication whatsoever that Plaintiffs were denied adequate process; as noted above, in cases in which a party believes that state officials have insufficiently or unfairly presented a proposed ballot initiative, Mo. Rev. Stat. § 116.190 provides that party with a cause of action to challenge the official's determination. *See also, e.g.*, *Cures Without Cloning v. Pund*, 259 S.W.3d 76 (Mo. Ct. App. 2008) (entertaining challenge to summary language by proponents of proposed amendment to Missouri Constitution). Indeed, Defendants represent that Plaintiffs have filed multiple such suits in Missouri state courts, challenging the same actions that are at issue in this case.[4] Thus, to the extent Plaintiffs attempt to assert procedural due process claims, those claims must be dismissed because Plaintiffs concede that they were afforded adequate process.

---

[4] Those suits may have provided bases for the Court to dismiss Plaintiffs' claims on res judicata or *Rooker-Feldman* grounds, but Defendants' failure to offer anything more than the bare assertion that they involved the same operative facts precluded that analysis.

### 3. Substantive Due Process Claims

Plaintiffs assert a substantive due process right to ballot language that is sufficiently clear that voters can ascertain what the proposed amendment states, and claim that Defendants' ballot summaries and fiscal notes so distorted their proposed amendments that voters were fundamentally misled about their content. *See Burton v. State of Georgia*, 953, F.2d 1266, 1269 (11th Cir. 1992) (recognizing possibility of substantive due process claim where "the election process itself reaches the point of patent and fundamental unfairness") (internal quotations and citations omitted).[5]

"At a constitutional minimum, standing requires three elements: (1) injury in fact, (2) causation, and (3) redressability." *Nolles v. State Comm. for Reorganization of School Dists.*, 524 F.3d 892, 898 (8th Cir. 2008) (citing *United States v. Hays*, 515 U.S. 737, 742-43 (1995) (internal quotations omitted). "Injury in fact requires the party bringing suit to have a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations and citations omitted). Because of this requirement of a particularized injury, "[t]he Supreme Court has consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and its laws, and seeking relief

---

[5] In *Burton*, the Eleventh Circuit found that with respect to summaries of proposed constitutional amendment, substantive due process is violated where the summary "so plainly mislead[s] voters about the text of the amendment that they do not know what they are voting for or against; that is, they do not know which or what amendment is before them." *Burton v. State of Georgia*, 953 F.2d 1266, 1270 (11th Cir. 1992) (internal quotations omitted). That is clearly not the case presented by Defendants' summaries, but in any event the Court does not need to reach the merits of these claims.

that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *See id.* at 899.

Plaintiffs have failed to allege that they have suffered injury in fact for Article III purposes, in that they do not claim that their proposed amendments ever came before voters, such that Defendants' alleged actions actually resulted in a fundamentally unfair election. Plaintiffs claim that their efforts to propose amendments to the Missouri Constitution have been frustrated by Defendants' allegedly misleading ballot summaries and fiscal notes, but they do not identify any substantive due process right requiring Defendants to abide by Missouri's statutory ballot initiative procedures. As discussed above, the Eighth Circuit has stated that the United States Constitution does not afford a right to propose ballot initiatives, *see Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997), and that being the case, it logically follows that there is no substantive due process right to have state officials comply with state-created initiative procedures.

Furthermore, even if voters actually had the opportunity to vote on these measures, Plaintiffs' claim that Defendants' summaries resulted in a fundamentally unfair election would present the type of generalized grievance for which Article III jurisdiction is unavailable. In claiming that the summaries inaccurately portrayed their proposed amendments, Plaintiffs are "claiming only harm to [their] and every citizen's interest in proper application of the Constitution and its laws," and in asking the Court for relief from such actions, they are "seeking relief that no more directly and tangibly benefits [them] than it does the public at large"; this is the essence of a generalized grievance. *See Nolles*, 524 F.3d at 899. This alleged injury would have been shared by all voters who participated in an election in which Defendants' proposed amendments were

8

offered for public vote, and as such, it is insufficient to satisfy Article III's injury in fact requirement.

### 4. Conclusion

Defendants are entitled to dismissal of all of Plaintiffs' § 1983 claims, either because Plaintiffs have failed to allege constitutional violations or because they lack standing to bring the asserted claims. Defendants' alleged failures to accurately portray Plaintiffs' proposed amendments to the Missouri Constitution do not violate Plaintiffs' First Amendment rights because there is no right under the United States Constitution to state initiative process. Although state initiative procedures can in some circumstances give rise to liberty interests protected by the Fourteenth Amendment's Due Process Clause, Defendants fail to assert viable procedural due process claims because they do not assert that the process afforded to them by Missouri was inadequate. Lastly, with respect to their substantive due process claims asserting a right to fair elections, Plaintiffs lack the necessary injury in fact to support Article III standing, in that there is no indication that their proposed amendments were ever actually considered in a public election, and because these claims present generalized grievances and not particularized injuries.

### B. State-Law Claims

Plaintiffs' remaining claims are their Count X, alleging that Defendant Carnahan violated Mo. Rev. Stat. § 116.334, and their Count XI, alleging that both Defendants conspired to violate that statute. Federal jurisdiction over these claims is presumably premised on supplemental jurisdiction under 28 U.S.C. § 1367(a), although no such jurisdictional allegation is contained in Plaintiffs' Complaint.

28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if":

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Having concluded that Plaintiffs' § 1983 claims must dismissed, those claims being the only claims over which the Court had original jurisdiction, the Court concludes that it will decline to exercise supplemental jurisdiction over these claims pursuant to § 1367(c)(3). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Although the Court is hesitant to characterize these claims as "novel or complex," there are certain additional considerations that indicate that this is the correct approach. Mo. Rev. Stat. § 116.190 provides for a cause of action to challenge the language of a ballot title prepared by the Secretary of State, and neither party has offered any authority, and the Court has located none, suggesting that § 116.334 provides for an independent cause of action or, if it does, that it would support one alleging only conspiracy to violate that statute. Furthermore, under § 116.190.1, claims challenging ballot summary language must be brought in the circuit court of Cole County,

Missouri, within ten days after the official ballot title is certified. Thus, if § 116.334 does not support a claim of a different nature than those brought under § 116.190, then Plaintiffs' state-law claims are both in the incorrect forum and untimely. Lastly, there is the general consideration that federal courts are reluctant to involve themselves in state election matters unless it is absolutely necessary, and here it is not, given that the Court unquestionably has the discretion not decide these claims pursuant to § 1367(c)(3). *Cf. Nolles v. State Comm. for Reorganization of School Dists.*, 524 F.3d 892, 898 (8th Cir. 2008) ("Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts.").

The Court therefore concludes that it will decline to exercise supplemental jurisdiction over these state-law claims, and as such, they will be dismissed along with Plaintiffs' constitutional claims under § 1983.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Montee's Motion to Dismiss [doc. #10] and Defendant Carnahan's Motion to Dismiss [doc. #11] are **GRANTED**.

Dated this 28th Day of September, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE